[Cite as *Canfield v. Columbia Gas Transm., L.L.C.*, 2016-Ohio-5662.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| RITA T. CANFIELD, TRUSTEE | C.A. No. 15CA010838 |
|---|---|
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| COLUMBIA GAS TRANSMISSION, LLC | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellee | CASE No. 14 CV 184602 |

DECISION AND JOURNAL ENTRY

Dated: September 6, 2016

---

SCHAFER, Judge.

{¶1} Plaintiff-Appellant, Rita T. Canfield, acting as Trustee of the Rita T. Canfield Trust, appeals the order of the Lorain County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee, Columbia Gas Transmission, L.L.C. ("Columbia"). Canfield also challenges the trial court's denial of her motion for summary judgment and motion to compel discovery. For the reasons set forth below, we affirm in part, reverse in part, and remand.

I.

{¶2} This matter involves a property dispute concerning a 25-foot by 50-foot parcel of land that is currently held by the Rita T. Canfield Trust. In 1934, the owners of an approximately 31-acre piece of property in Grafton Township, Ohio executed a lease whereby the 1,250-square-foot parcel of land in question was leased to Ohio Fuel Gas Company ("OFGC") so that the company could run gas pipelines and operate related equipment. In return,

OFGC was required to make an annual $25.00 lease payment to the property owners before December 10 of each year. As pertinent to this case, the lease stated that its duration was for "the term of 25 years and so long thereafter as the use of [the section] for the purposes herein mentioned may be necessary and convenient to [OFGC] in the operation of its pipelines[.]" The lease further provided that "[w]hen [OFGC] shall desire to terminate this lease, it shall have the right and privilege so to do upon payment of the sum of one dollar ($1.00) to [the then-property owners]." The lease also indicates that it is binding on all parties' successors.

{¶3} After the lease's execution, Columbia became OFGC's successor-in-interest and the property in question changed ownership several times. By 2008, the trusts of Virgil and Colleen Tompkins held title to the property, in addition to several other properties that had leases with Columbia. The Tompkinses both died in 2008 and their four children, one of which is Canfield, inherited the property. Columbia was unaware that the Tompkinses had died and continued to make the annual $25.00 lease payment in 2008 and 2009 to one of Canfield's sisters, who was a co-trustee of the Tompkinses trusts. Canfield ultimately took sole ownership of the property in question on December 10, 2009. Canfield subsequently conveyed the property to the Rita T. Canfield Trust on February 2, 2010.

{¶4} Canfield's sister contacted Columbia in March of 2010 to inform the company that the several properties held by the Tompkinses' trusts had changed ownership. Columbia then requested change-in-ownership documentation so that they could tender rent payments to the property's new owner. Canfield's sister subsequently sent documentation to Columbia regarding the change in ownership, but this documentation did not refer to the property in question and did not list Canfield's information. Columbia then began placing its annual lease payments into an unclaimed status. However, around this time, Columbia became aware that the

property in question had transferred to Canfield, as Gregory Scott Larch, one of Columbia's employees, entered the following note into the company's internal system on April 6, 2010: "Property embraced by this lease was conveyed to Rita Canfield ATT is to send paperwork (Mark Stephenson [phone number])."

{¶5} Canfield did not contact Columbia until June 2012, when her attorney sent a letter regarding the lease. In the letter, Canfield's attorney challenged the validity and effectiveness of the lease, but he did not direct Columbia to send the annual lease payments to any new address. In August 2012, Columbia responded in writing that the lease remained valid and in force. Canfield did not contact Columbia again until September 10, 2013, when she purportedly terminated the lease due to non-payment of the annual lease amount. Columbia responded that Canfield was not listed as the lease's payee and it again requested that she provide documentation for the forwarding of her lease payments. In October of 2013, Canfield's attorney sent Columbia a letter that provided the necessary documentation. This letter also restated Canfield's position that Columbia must vacate the property in question.

{¶6} On December 1, 2013, Columbia tendered its annual $25.00 lease payment to Canfield for the 2014 calendar year, but Canfield rejected it. Columbia then re-tendered the lease payment for 2014, as well as the amounts for the previous few years, but Canfield rejected these payments as well. Thereafter, Columbia wrote a letter to Canfield's attorney informing him that the lease was still valid and that the company would place all back and future lease payments in escrow for Canfield's benefit.

{¶7} Canfield filed a complaint in the Lorain County Court of Common Pleas asserting an action for forcible entry and detainer against Columbia pursuant to R.C. 1923.02(A)(9), as well as an action to recover real property and damages. During the course of

the matter, Canfield moved to compel Columbia to disclose the location and depth of its facilities on the property. In her motion, Canfield asserted that this information was relevant to the nature and extent of Columbia's use of the property and to the actions she could take to eject Columbia from the property if she prevailed in the lawsuit. Columbia responded to Canfield's motion to compel by arguing that its pipeline infrastructure maps were confidential, irrelevant to the litigation, and requested a protective order. The trial court never explicitly ruled on the motion to compel.

{¶8} The parties thereafter filed cross-motions for summary judgment on Canfield's claims. The trial court ultimately granted Columbia's motion for summary judgment and denied Canfield's summary judgment motion. In so doing, the trial court reasoned that: (1) Canfield did not establish that Columbia breached the lease because it acted in good faith and substantially performed its obligations under the lease; (2) Canfield failed to properly give Columbia timely notice of her ownership interest in the property or otherwise inquire about the lease payments; and (3) Canfield failed to demonstrate any damages other than accrued rent, which Columbia ultimately tendered to her.

{¶9} Canfield filed this timely appeal, raising three assignments of error for this Court's review. To facilitate our analysis, we elect to address Canfield's first and second assignments of error together.

II.

**Assignment of Error I**

**The lower court erred when it granted summary judgment in favor of Appellee.**

**Assignment of Error II**

**The lower court erred when it denied summary judgment in favor of the Appellant with respect to her cause of action for forcible entry and detainer.**

{¶10} In her first assignment of error, Canfield argues that the trial court erred by granting summary judgment in favor of Columbia on her claims. Canfield's second assignment of error asserts that the trial court erred by denying her motion for summary judgment on her claims. We agree to the extent that the trial court erred by granting summary judgment in favor of Columbia.

{¶11} We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996). Summary judgment is only appropriate where (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. Civ.R. 56(C). Before making such a contrary finding, however, a court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶12} Summary judgment consists of a burden-shifting framework. To prevail on a motion for summary judgment, the party moving for summary judgment must first be able to point to evidentiary materials that demonstrate there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of

6

responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 449 (1996).

{¶13} "A forcible entry and detainer action is an action upon a contract in which a landlord seeks to regain possession of [her] premises from a tenant." *Tillimon v. Jankowski*, 6th Dist. Lucas No. L-91-262, 1992 WL 114606, * 2 (May 29, 1992), citing *Behrle v. Beam*, 6 Ohio St.3d 41, 44 (1983). "In a case, such as this one, where the parties entered into a written rental agreement, *i.e.,* lease, the landlord is authorized to commence an action in forcible entry and detainer pursuant to R.C. 1923.02(A)(9)." *Id.* To recover on her action for forcible entry and detainer, Canfield had to establish that she had the right to possess the property, because "[t]he gist and foundation of the action is the right to present possession." *Columbus Investment Group, Inc. v. Maynard*, 10th Dist. Franklin Nos. 02AP-271, 02AP-418, 2002-Ohio-5968, ¶ 31, quoting *Egner v. Egner*, 24 Ohio App.3d 171, 172 (11th Dist.1985).

{¶14} At the outset, we note that the parties do not dispute the underlying facts of this case. Rather, the parties disagree about the legal import of the undisputed facts. Specifically, the parties disagree about whether Columbia breached the lease by failing to make annual rent payments to Canfield in a timely manner.

{¶15} In support of her motion for summary judgment, Canfield submitted an affidavit wherein she attests to the following: (1) Canfield became the owner of the real property in question in December 2009; (2) Columbia had knowledge of Canfield's ownership interest in the property in question as early as April 2010; (3) Columbia breached the lease by failing to tender rent payments to Canfield for 2011, 2012, and 2013; (4) Canfield terminated the lease via letter after Columbia breached the lease; (5) Canfield provided Columbia with written notice to vacate the property prior to filing the present lawsuit; and (6) Columbia remains in possession of the

property in question. Canfield's affidavit cites to various attached exhibits that buttress her assertions. Columbia's opposition brief to Canfield's motion for summary judgment cites to the same evidence that is contained in its motion for summary judgment. From this evidence, we determine that Canfield has satisfied her initial *Dresher* burden with respect to her forcible entry and detainer claim.

{¶16} In support of Columbia's motion for summary judgment, the company cites to Canfield's own deposition testimony, where she admits that she first learned of the lease's existence roughly six months before her mother's death in 2008. However, Canfield further testified that she never actually read the lease until 2012. Columbia also cites to the deposition testimony of Gregory Scott Larch, its employee who reviewed the documents that Canfield's sister sent to the company regarding the property's change in ownership. In his deposition, Larch testified that he spoke with Canfield's sister in 2010 upon discovering that her submitted documents did not match the property or the lease and that the property had been conveyed to Canfield. Larch testified that Canfield's sister "instructed" him that Canfield's attorney would send Columbia the proper documentation needed to transfer the lease payments to Canfield. Columbia asserts that it did not receive this documentation until October 31, 2013, over three years later. Larch further testified that upon learning that the Tompkinses had both died, Columbia, per company policy, placed all future lease payments into "an unclaimed status where they accrue until either a new landowner provides proof of ownership and claims the funds, or the funds escheat to the state." Larch also testified that upon receiving the necessary documentation from Canfield's attorney in 2013, Columbia sent Canfield all payments due under the lease, but Canfield rejected these payments. Canfield responded in opposition to Columbia's summary judgment motion, wherein she reiterates the same arguments put forth in her own

motion for summary judgment. From this evidence, we determine that Columbia has met its initial *Dresher* burden with respect to Canfield's forcible entry and detainer claim.

{¶17} With each party having satisfied their initial *Dresher* burden, we must now determine whether the parties have met their reciprocal burden under Civ.R. 56(E). In her brief in opposition to Columbia's summary judgment motion, Canfield cites to Columbia's failure to tender timely annual lease payments in support of her argument that Columbia breached the lease. However, in Columbia's brief in opposition to Canfield's motion for summary judgment, Columbia cites to evidence showing that they (1) attempted to secure the requisite change-in-ownership documentation from Canfield, (2) held the annual lease payments in an unclaimed status pending receipt of said documentation, and (3) immediately tendered current and accrued lease payments to Canfield when she ultimately submitted proof of ownership of the property in question. Columbia argues that this evidence demonstrates that it acted in good faith and substantially performed its obligations under the lease.

{¶18} Viewing each party's respective evidence in favor of the non-moving party, we determine that Canfield and Columbia have both satisfied their reciprocal burden of demonstrating a triable issue of material fact. Given the record before us, we conclude that a genuine issue of material fact exists regarding whether Columbia breached the lease, thus giving Canfield a right to eject Columbia from the property in question. As such, since neither party is entitled to summary judgment, the trial court erred by granting summary judgment in favor of Columbia.

{¶19} Accordingly, Canfield's first assignment of error is sustained and her second assignment of error is overruled.

**Assignment of Error III**

**The lower court abused its discretion when it impliedly denied the Appellant's motion to compel.**

{¶20} In her third assignment of error, Canfield argues that the trial court erred by granting summary judgment in favor of Columbia Gas without ever explicitly ruling on her motion to compel. Generally, when a trial court fails to rule on a motion, as is the case here, the motion will be considered denied for purposes of appellate review. *State v. Olah*, 146 Ohio App.3d 586, 592 fn. 2 (9th Dist.2001), citing *Georgeoff v. O'Brien*, 105 Ohio App.3d 373, 378 (9th Dist.1995); *Solon v. Solon Baptist Temple, Inc.*, 8 Ohio App.3d 347, 351–352 (8th Dist.1982); *see also Sabbatis v. Burkey*, 166 Ohio App.3d 739, 2006-Ohio-2395, ¶ 33 (5th Dist.) (determining that the trial court's failure to rule on a motion to compel constituted a denial of the motion). However, given our resolution of Canfield's first assignment of error determining that neither party is entitled to summary judgment, Canfield's motion to compel will still be pending before the trial court on remand. As such, this assignment of error is not yet ripe for review and we decline to address it. *See Fannie Mae v. Trahey*, 9th Dist. Lorain No. 12CA010209, 2013-Ohio-3071, ¶ 13.

### III.

{¶21} Canfield's first assignment of error is sustained and her second assignment of error is overruled. Canfield's third assignment of error is not yet ripe for review. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
CONCURS.

MOORE, P. J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

MARK E. STEPHENSON, Attorney at Law, for Appellant.

MICHAEL L. SNYDER, KATHLEEN J. SANZ and CHRISTOPHER DEAN, Attorneys at Law, for Appellee.